# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 358 | **DATE** | 11/09/2001 |
| **CASE TITLE** | Ty, Inc. vs. Agnes M. Ltd et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Plaintiff's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the Plaintiff's Motion for Summary Judgment [25-1] is GRANTED as to Count III and DENIED as to Counts I, II, and IV.

(11) ■ [For further detail see attached memorandum opinion and order.]

| | No notices required, advised in open court. | | | | | |
|---|---|---|---|---|---|---|
| | No notices required. | | | | *number of notices* | 2 |
| ✓ | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | | | *date docketed* | NOV 13 2001 |
| | Docketing to mail notices. | | | | *docketing deputy initials* | CM |
| | Mail AO 450 form. | | | | *date mailed notice* | 11-9-01 |
| | Copy to judge/magistrate judge. | | | | | |
| mds(lc) | | courtroom deputy's initials | | | *mailing deputy initials* | |
| | | | | Date/time received in central Clerk's Office | | |

**Document Number** 62


**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **TY, INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 00 C 358** |
| **v.** ) | |
| ) | **HONORABLE DAVID H. COAR** |
| ) | |
| **AGNES M. LTD., and KATHERINE** ) | |
| **HOWES** ) | |
| ) | |
| ) | |
| ) | |
| **Defendants** ) | |

## MEMORANDUM OPINION AND ORDER

Ty, Inc. ("Ty") brings a four-count complaint against Agnes, M. Ltd. and its owner, Katherine

Howes ("Howes"), alleging trademark infringement, unfair competition, and trademark dilution

under the Lanham Act, 15 U.S.C. §1051 *et. seq.*, and alleging deceptive trade practices under Illinois

law. Before this Court is Ty's motion for summary judgment on all counts. For the reasons stated

below, this Court GRANTS in part and DENIES in part Ty's motion for summary judgment.

### I. Summary Judgment Standard

A motion for summary judgment in trademark infringement cases must be approached with

great caution. AHP Subsidiary Holding Co. v. Stuart Hale Co., 1 F.3d 611, 616 (7th Cir. 1993).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c); Cox v. Acme Health Serv., Inc., 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of

material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 818-19 (7th Cir. 1999).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552-53. The non-movant cannot rest on the pleadings alone, but must designate *specific facts* in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Anderson, 477 U.S. at 256-57; Hot Wax, Inc., 191 F.3d at 818. The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250, 106 S. Ct. at 2511. Weighing evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255, 106 S. Ct. at 2515.

## II. Background

The following facts are taken from the parties' Local Rule 56.1(a)(3) and (b)(3) Statement of Material Facts, with all reasonable inferences resolved in favor of Howes, the non-movant. Ty is the creator of certain plush toys. Ty creates and markets many of its plush toy products under its BEANIE family of marks, a family that includes its BEANIE BABIES, BEANY BABY, BEANIE BUDDIES, BEANIE BUDDY, TEENIE BEANIE BABIES, BEANIE KIDS, E-BEANIE BABIES, BEANIES, and BEANIE trademarks[1]. Ty has sold over one billion BEANIE products since their introduction in 1993.

A brief description of the evolution of Ty's BEANIE products is necessary. Ty introduced its first line of BEANIE products in 1993, the BEANIE BABIES plush toys. Ty's BEANIE BABIES became an overnight phenomenon, one of the most popular toy crazes of all time. Newspapers across the country have reported on this phenomenon; people were crazy for BEANIE BABIES.

After the overwhelming success of Ty's BEANIE BABIES toys, Ty introduced additional lines of BEANIE products. It introduced its second line, TEENIE BEANIE BABIES, in April 1997. In 1997, 1998, 1999, and 2000, these products were sold as "happy meal" rewards through Ty's licensee, McDonald's. Like the BEANIE BABIES trademark, the TEENIE BEANIE BABIES trademark appeared on product packaging and on in-store advertising as well. The TEENIE BEANIE BABIES also were an instant success. Ty introduced a third line of BEANIE products in 1998, its BEANIE BUDDIES toys, which also are enormously successful and widely

---

[1] Ty has obtained United States trademark registrations for several of its trademarks, including BEANIE BABIES (Reg. No. 2,049,196), THE BEANIE BABIES COLLECTION (Reg. No. 2,080,995), the TY BEANIE BABIES OFFICIAL CLUB ORIGINAL BEANIE BABY and Design (Reg. No. 2,368,016), and THE BEANIE BUDDIES COLLECTION (Reg. No. 2,052,465).

collected by plush toy fans across the country. Ty introduced a fourth line of BEANIE products last year, BEANIE KIDS. The BEANIE KIDS have carried on the popularity of Ty's BEANIE products since their inception.

Ty, through its licensee, Ty Trade, has sold BEANIE BABIES and has facilitated the sale of BEANIE BABIES by others over the Internet at the www.tytrade.com web site. At this web site, Ty, through its licensee, has also sold its fifth line of BEANIE products, the E-BEANIES. Further, Ty has marketed and sold other products under its BEANIE trademarks, including swing tag protectors, product display cases, calendars, collectors cards, and binders. Ty's collectors cards, introduced in 1998, have become popular products in their own right, and have generated a wide following across the country. At about the same time that the collectors cards were introduced, Ty also put out another product, the BEANIE BABIES OFFICIAL CLUB kit. Club members received various items with their kit, including cards, stickers, and a special collectible BEANIE BABY toy. These kits were extremely high sellers across the country.

Ty prominently displays its BEANIE BABIES trademark on its products and in advertising its products. Ty's swing tags constitute the main form of packaging that accompanies Ty's plush toys, and prior to December 1997 Ty had already marketed at least six BEANIE BABIES with the BEANIES trademark in the swing tag–Ziggy, Garcia, Grunt, Dotty, Waves, and Tuffy. All six swing tags contain the BEANIES trademark in the product poem, and all six swing tags spell the trademark BEANIES with a capital "B," expressing to the consuming public that the trademark refers to Ty's plush toy products. Often, Ty presents its BEANIE BABIES trademark with distinct multi-colored lettering; Ty has used this distinct BEANIE BABIES logo since 1995. Ty's products and trademark have been advertised in point-of-sale displays as well as on Ty's enormously popular web site, located at BEANIEBABIES.COM.

Ty does not sell BEANIE BABIES directly to consumers. Instead, Ty sells BEANIE BABIES through licensees and select authorized distributors. These distributors generally place some promotional signs indicating to the public that they are authorized distributors. A well-developed secondary market for BEANIE BABIES has emerged. Ty never bought or sold BEANIE BABIES on the secondary market.

Howes[2] registered the Internet domain name beaniebabes.com in December 1997 without Ty's authorization or consent and after Ty established its BEANIEBABIES.COM web site. At the time Howes registered her beaniebabes.com domain name, she knew that Ty promoted its products at its BEANIEBABIES.COM web site. Howes chose the name, beaniebabes.com, because she desired to make money selling BEANIE BABIES; she admitted that she would have chosen BEANIEBABIES.COM if it were available. She began selling BEANIE BABIES through this web site in early 1998. Howes prominently displayed Ty's color BEANIE BABIES logo at her beaniebabes.com web site. In addition to promoting and selling Ty plush toys at her web site, Howes likewise promoted her physical store, The Bean Bag Store.

Also in December 1997, Howes registered the Internet domain name bhome.com to make money. She linked her beaniebabes.com web site to various internal web pages at her bhome.com web site. At these bhome.com internal pages, Howes promoted and sold Ty plush toys, non-Ty plush toys, and non-Ty products related to plush toys. Howes also linked her beaniebabes.com web site to internal pages at Ty's BEANIEBABIES.COM web site, and she could not recall whether she placed any warnings to alert visitors that they were being transferred from beaniebabes.com to BEANIEBABIES.COM. However, on one of the pages of the

---

[2]Howes is the individual owner of her Minnesota corporation, Agnes M. Ltd. Throughout this opinion, by naming Howes, this Court hereby includes her corporation as well.

beaniebabes.com web site, Howes displayed a newsletter on BEANIE BABIES and that web page disclaimed any affiliation with Ty.

At the beaniebabes.com web site, Howes promoted non-Ty products that were very similar to Ty BEANIE products. For example, Howes promoted a product called WEE BEANIES by linking her beaniebabes.com web site to internal web pages at her bhome.com web site that promoted, offered to sell, and sold WEE BEANIES. According to Howes' advertisements, WEE BEANIES are about the same size as the TEENIE BEANIES. And, just as Ty's TEENIE BEANIES have been sold in themed sets (such as bears from different countries), WEE BEANIES also were sold in similar themed sets (namely animals from different cities). Ty never consented to the manufacture, promotion, or sale of WEE BEANIES.

Howes also promoted "Backie Packies" at her beaniebabes.com web site by linking that web site to internal web pages at her bhome.com web site. These "Backie Packies" were designed to look just like Ty's own products. According to Howes, "Backie Packies" are from 12 inches to 22 inches long (depending on how they are positioned), which is similar in size to some of Ty's BEANIE BUDDIES. Howes advertised "Backie Packies" as "plush backpacks that look very much like Beanies," and "like Beanie Babies to wear on your back." Howes also used images of Ty's products within her advertisements for "Backie Packies." Ty never consented to the manufacture, promotion, or sale of "Backie Packies," or Howes' use of Ty's trademarks in connection with their promotion.

Howes also promoted BEANIE BELTS at her beaniebabes.com web site by linking that web site to internal web pages at her bhome.com web site. At Howes' bhome.com web page, Howes referred to BEANIE BELTS as BEANIE BABIES BELTS at the very top of the page. Howes admitted that the manufacturer of these goods called them by the descriptive name "belts

to put Beanies in," but that Howes herself decided to promote them under the name BEANIE BELTS. Ty never consented to the manufacture, promotion, or sale of BEANIE BELTS or BEANIE BABIES BELTS.

Finally, Howes promoted BEANIE BABIES BACKPACKS, STRING A BEANIE's, and BEANIE FASHIONS at her beaniebabes.com web site by linking that web site to internal web pages at her bhome.com web site. BEANIE FASHIONS were promoted and sold through what Howes called her BEANIE FASHION BOUTIQUE. Ty never consented to the manufacture, promotion, or sale of BEANIE BABIES BACKPACKS, STRING A BEANIE's. or BEANIE FASHIONS, nor did Ty consent to the use of its BEANIE trademarks in connection with the promotion of such products.

Ty brought this lawsuit against Howes alleging (1) trademark infringement, (2) unfair competition, and (3) trademark dilution under the Lanham Act, 15 U.S.C. §1051 *et seq.*, and (4) deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* Ty argues that Howes is seeking to obtain a free ride from the extraordinary goodwill associated with Ty's BEANIE BABIES and BEANIES trademarks. In short, Ty argues that Howes' infringed Ty's trademark by selecting and using the domain name beaniebabes.com, which is essentially identical to Ty's BEANIEBABIES.COM, by appropriating and using Ty's distinctive BEANIE BABIES logo on Howes' web site, and by selling unauthorized non-Ty goods that incorporated the entirety of Ty's BEANIE BABIES and BEANIES trademarks.

Howes argues that the "beanie babies" mark has become generic and therefore her use of the term cannot constitute trademark infringement. A search on March 16, 2001 revealed 1,600 domain names that included the word "Beanie." Further, Howes submitted twelve exhibits in

which the listed product names contained the word "Beanie." Examples of these products are: Disney Beanie Babies, Count Chocula Beanie, Spice Girls beanie babies, Harley Davidson beanie baby, Coca Cola International beanie babies, WWF beanie babies, an IKE beanie baby from PetSmart, Beanie Babies Grateful Dead, and some web pages from auction sites that list non-Ty products under a "Beanie Baby" category.[3]  Howes also argues that even if "beanie babies" has not become generic, Ty's claims are barred by the Fair Use and the First Sale Doctrines.

### III. Discussion

At the outset, this Court notes that Ty has brought several cases to enforce its asserted trademark rights. See Ty, Inc. v. Perryman, No. 99 C 8190, 2001 WL 826893, at *2-3 (N.D. Ill. July 17, 2001) (collecting cases).  In fact, both parties agree that Ty has been involved in at least 97 lawsuits in the Northern District of Illinois.  As Judge Grady points out in Ty, Inc. v. Perryman, while some of these cases present different procedural postures than this case, all are helpful in that they review some of the evidence and legal principles at issue in this case.  Like Judge Grady, this Court highlights the following passage from Ty, Inc. v. Publications International, Ltd., No. 99 C 5565, 2000 WL 1499449, at *1 (N.D. Ill. Oct. 6, 2000) as pertinent background that sheds light on this case:

> The consumer frenzy over Beanie Babies can be attributed in part to Ty's unique marketing strategy. Ty creates scarcity in the market by selling its products only to small retail stores, and then only in small quantities. In addition, Ty periodically retires different Beanie Babies, taking them out of circulation and thus boosting their market value among collectors. Ty's marketing plan emphasizes the

---

[3]Ty does not deny these facts.  Ty does, however, note that Howes produced some of these exhibits through "rigged searches," meaning that instead of searching for "Beanie Babies" in general, the searcher was looking for web sites that prominently used "Beanie Babies" with "Spice," or "Beanie Babies" with "Harley."

collectible nature of its products, and collectors are constantly on the look out for new Beanie Babies.

A thriving secondary Beanie Babies collector's market has emerged. Beanie Baby enthusiasts trade and sell Ty's products over the Internet, at yard sales, through classified ads, and through collectors' clubs. There have been hundreds--perhaps thousands--of newspaper articles and television news stories discussing the market for Beanie Babies, as well as a proliferation of Beanie- related web sites. Beanie Babies are not the exclusive province of child collectors. Ty's toys are sought after by potential investors who hope to capitalize on the sale of "rare" Babies, some of which fetch thousands of dollars at collectors' auctions.

This Court now turns to Ty's motion for summary judgment.

## 1. *Trademark Infringement, Unfair Competition, and Deceptive Trade Practices Claims*

Ty seeks summary judgment in its favor on its trademark infringement claim pursuant to §1114 and §1125 of the Lanham Act. Because trademark infringement, unfair competition, and deceptive trade practices all center around the "likelihood of confusion" test, a demonstration of trademark infringement generally will establish unfair competition under §43(a) of the Lanham Act and deceptive trade practices under Illinois law. Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1115 (7th Cir. 1997); McGraw-Edison Co. v. Walt Disney Prod., 787 F.2d 1164, 1174 (7th Cir. 1986); D 56, Inc. v. Berry's, Inc., 955 F. Supp. 908, 920 (N.D. Ill. 1997); T.V. Land v. Viacom Int'l, 908 F. Supp. 543, 553 (N.D. Ill. 1995).

Both federal statutory law and state common law protect trademark interests. Dunn v. Gull, 990 F.2d 348, 350 (7th Cir. 1993). Further, the question of infringement of both registered and unregistered trademarks turns on the "likelihood of confusion" test. AHP Subsidiary Holding Co. v. Stuart Hale Co., 1 F.3d 611, 615 (7th Cir. 1993); Ty, Inc. v. Perryman, 2001 WL 826893, at *3. To establish a prima facie case of registered trademark infringement under §1114, Ty must establish that (1) it owns valid registered trademarks and (2) that Howes' use of these trademarks is "likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. §1114(1)(a). Similarly, to prevail on its common law trademark infringement claim for unregistered marks under §1125, Ty

must establish that (1) it has a protectable trademark and (2) a likelihood of confusion exists. Ty, Inc. v. Jones Group Inc., 237 F.3d 891, 897 (7th Cir. 2001). Customer confusion is not restricted to confusion over the source of the goods. Rather, a court considers whether a customer visiting Howes' beaniebabes.com web site or buying one of Howes' non-Ty products would likely believe that they are "in some way related to, or connected or affiliated with, or sponsored by" Ty. Nike, Inc. v. "Just Did It" Enters., 6 F.3d 1225, 1228 (7th Cir. 1993); see also Ty, Inc. v. Publ'ns Int'l, Ltd., No. 99 C 5565, 2000 WL 1499449, at *9 (N.D. Ill. Oct. 6, 2000).

*A. Trademark Infringement Under §1114(1)(a)*

    *1. Validity of Registered Trademarks*

Ty owns federal trademark registrations for BEANIE BABIES, THE BEANIE BABIES COLLECTION, TY BEANIE BABIES OFFICIAL CLUB, ORIGINAL BEANIE BABY and Design, and THE BEANIE BUDDIES COLLECTION. There is no dispute regarding Ty's ownership of these federally registered trademarks. These registrations are "prima facie evidence of the validity of the registered mark and of the registration of the mark," and of Ty's exclusive right to use the registered marks in commerce on or in connection with the goods specified in the registration. 15 U.S.C. § 1115(a); see also EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc., 746 F.2d 375, 379 (7th Cir. 1984); Ty, Inc. v. West Highland Publ'g, No. 98 C 4091, 1998 WL 698922, at *17 (N.D. Ill. Oct. 5, 1998). Thus, Ty satisfies this first prong of the trademark liability test for its registered trademarks. The question then is whether Howes infringed these registered trademarks by using the Internet domain name beaniebabes.com, by posting Ty's distinctive BEANIE BABIES logo on her web site and linking Ty's BEANIEBABIES.COM web site to her web page, and by selling unauthorized non-Ty goods that incorporated Ty's trademarks.

*2. Likelihood of Confusion*

It is well established that questions of likelihood of confusion involve all fact and no law, and that these questions usually are reserved for the jury. Ty, Inc. v. Perryman, 2001 WL 826893, at *4 (citing Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1428 (7th Cir. 1985); Nike, Inc., 6 F.3d at 1233). Thus, this Court considers Ty's summary judgment motion on this issue with great caution.

In this case, to determine whether there is a likelihood of confusion, this Court will not only compare products bearing similar trademarks to Ty's that Howes advertised and sold through her web site[4] but this Court *also* will consider whether consumers would believe that because of Howes' Internet domain name, and because she placed Ty's BEANIE BABIES logo on her web site, customers would believe her business is in some way related to, or connected or affiliated with, or sponsored by Ty. Therefore, this case seems to present a stronger case for likelihood of confusion than previous Ty cases in the 7th Circuit or this jurisdiction. See e.g. Ty, Inc. v. GMA Accessories, 132 F.3d 1167 (7th Cir. 1997) (comparing only products – Ty's "Squealer" and "Daisy" BEANIE BABIES to GMA's "Preston the Pig" and "Louie the Cow" plush toys); Ty, Inc. v. Perryman, 2001 WL 826893, at *1 (considering whether the business names "Bargain Beanies" and "BargainBeanies.com" caused a likelihood of consumer confusion); Ty, Inc. v. Jones Group, Inc., 237 F.3d at 891 (comparing only two products – BEANIE BABIES to Beanie Racers); Ty, Inc. v. Softbelly's, Inc., No. 00 C 5230, 2001 WL 125321, at *1 (N.D. Ill. Feb. 9, 2001) (comparing only two products – BEANIE BABIES to Screenie Beanies); Ty, Inc. v. Le Clair, 103 F. Supp. 2d 1047

---

[4]These products are: WEE BEANIES (advertised as the "same size as TEENIE BEANIES"), Backie Packies ("like Beanie Babies you can wear on your backs"), BEANIE BELTS/BEANIE BABIES BELTS, BEANIE BABIES BACKPACKS, STRING-A-BEANIE'S, and BEANIE FASHIONS.

(N.D. Ill. 2000) (comparing BEANIE BABIES bears to HolyBears, Inc. plush toy bears); Ty, Inc. v. Clark, No. 99C 5532, 2000 WL 51816, at *1 (N.D. Ill. Jan. 14, 2000) (dismissing case against defendant who used the Internet domain name beaniebabiesuk.com for lack of personal jurisdiction).

There are seven factors to consider when determining whether a likelihood for consumer confusion exists: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of defendant to palm off her product as that of another. Ty, Inc. v. Jones, Inc., 237 F.3d at 897-98 (citing Helene Curtis Indus., Inc. v. Church & Dwight Co., Inc., 560 F.2d 1325, 1330 (7th Cir. 1977)). None of these factors is dispositive in itself, and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved. AHP Subsidiary Holding Co., 1 F.3d at 616; McGraw-Edison, 787 F.2d at 1168.

*a. Similarity between the marks in appearance and suggestion*

There are several instances where Howes' marks are substantially similar, if not identical, to Ty's marks. The most prominent and obvious similarity centers around the word, "beanie(s)." For example, Howes' Internet domain name Beaniebabes.com is one letter short of being identical to BEANIEBABIES.COM and BEANIE BABIES. In fact, Howes admitted that she selected beaniebabes.com *because of* its similarity to Ty's BEANIEBABIES.COM domain name; she would have selected BEANIEBABIES.COM if it had been available. In other words, Howes selected a domain name that would come as close as possible to Ty's own trademark and domain name without actually duplicating it. Courts in other jurisdictions hearing cases with this slight a difference in the names of the marks have found substantial similarity and a likelihood of confusion. See e.g., TCPIP Holding Co., Inc. v. Haar Communications, Inc., 244 F.3d 88, 101-02 (2d Cir. 2001) (finding

-12-

THECHILDRENPLACES.COM "so clearly similar" to THE CHILDREN'S PLACE trademark that "the differences are scarcely noticeable"); Trade Media Holdings, Ltd. v. Huang & Assoc., 123 F. Supp. 2d 233, 240 (D. N.J. 2000) (finding ASIANSOURCE.COM identical to ASIAN SOURCES trademark and holding that "the likelihood of confusion is high when, as here, the plaintiff has used its mark to establish a domain name with virtually the identical address as defendant's allegedly infringing use"); Washington Speakers Bureau, 33 F. Supp. 2d 488 (E.D. Va. 1999) (finding that WASHINGTONSPEAKERS.COM and WASHINGTON-SPEAKERS.COM infringed WASHINGTON SPEAKERS BUREAU trademark); Minnesota Mining & Mfg. Co. v. Taylor, 21 F. Supp. 2d 1003, 1005 (D. Minn. 1998) (finding POST-ITS.COM and IPOST-IT.COM "the same or substantially identical" to POST-IT trademark); Cardservice Int'l, Inc. v. McGee, 950 F. Supp. 737, 740-41 (E.D. Va.. 1997) (finding a likelihood of confusion between CARDSERVICE.COM and the CARDSERVICE trademark and noting that "minor differences between the registered mark and the unauthorized use of the mark do not preclude liability under the Lanham Act when the unauthorized use is likely to cause confusion"); Lozano Enters. v. La Opinion Publ'ng Co., 44 U.S.P.Q. 2d (C.D. Cal. 1997) (finding that LAOPINION.COM, LAOPINION-SA.COM, LAOPINION-LOSANGELES.COM, and LAOPINION.NET infringed LA OPINION trademark).

A second example is that Howes prominently displayed Ty's BEANIE BABIES colorful logo on her web site. Thus, the use of this logo is more than substantially similar, it is identical. Finally, Howes promoted and sold unauthorized goods that incorporated the entirety of Ty's BEANIES trademark and BEANIE family of marks. These goods are WEE BEANIES, BEANIE BELTS/BEANIE BABIES BELTS, STRING A BEANIE'S, and BEANIE FASHIONS.

Often, "[if] one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." Ty, Inc. v. Perryman, 2001 WL

826893, at *4 (citations omitted). As in several other cases before courts in this jurisdiction, this Court finds unconvincing the argument that the term "beanies" or "beanie babies" is generic, see infra I.B., and therefore, it is not entitled to extra consideration. See e.g., Ty, Inc. v. Perryman, 2001 WL 826893, at *11 (concluding in case involving the domain name Bargainbeanies.com "that there is no genuine issue as to whether the term 'beanies' is generic. It is not."); Ty, Inc. v. Softbelly's, Inc., 2001 WL 125321, at *5 (finding that "[e]ven though Softbelly's mark makes use of the term 'screenie' in conjunction with 'beanies,' it is still 'beanies' which the mark trades on"); Ty, Inc. v. The Jones Group, Inc., 237 F.3d at 899 (finding that "[t]he word 'Beanie' is a well-known and famous part of the Ty mark, rendering it the more salient portion of the mark and therefore deserving greater weight than the surrounding elements").

This Court must not only compare the names between the two parties' marks, but it must also compare the marks as a whole and as actually used. Ty, Inc. v. Perryman, 2001 WL 826893, at *5, Scandia Down Corp., 772 F.2d at 1431. In Ty, Inc. v. Perryman, there were several factors that created a genuine issue of fact whether a likelihood of confusion existed. The first factor was that the word "bargain" preceding "beanies" was significant because it connoted a negotiation that reflected the defendant's business as a second-hand dealer. Id. Second, the court distinguished its case from the cases where words like "screenie" or "racers" seem to signify types of BEANIE BABIES which resemble Ty's own variations: "Teenie Beanies" or "Beanie Buddies." Id. Third, the court found that the defendant's disclaimer that stated "Bargain Beanies is neither endorsed by nor affiliated with Ty, Inc., trademark holder of Beanie Babies" tended to support her position that her mark was not confusing. Id.

Here, unlike Ty, Inc. v. Perryman, there is not a myriad of factors that in combination create a genuine issue of fact as to whether the marks are sufficiently similar to create a likelihood of

confusion. The domain name at issue here, beaniebabes.com, does not connote a business the way that Bargainbeanies.com may. Because there is only a one-letter difference between beaniebabes.com and BEANIEBABIES.COM, it is much more likely that people would not be able to distinguish the difference at first glance and without careful scrutiny. Further, like the very cases the court in *Ty, Inc. v. Perryman* pointed out, Howes' used words in the non-Ty products she sold that seem to signify types of BEANIE BABIES that resemble Ty's own variations.

To be sure, there are some superficial similarities between this case and Ty v. Perryman. Like Perryman, Howes also placed a disclaimer on her web site that denounced affiliation with Ty. And, as Judge Zagel noted, "in the specific context of the market for Beanie Babies, a consumer may be less likely to think that any one publication about Beanie Babies emanates from, or is endorsed by Ty. A disclaimer may have more effect in these particular circumstances." Ty, Inc. v. Publ'ns Int'l, Ltd., 2000 WL 1499449, at *11 (denying summary judgment for Ty where defendant publisher did not prominently display Ty's BEANIE BABIES logo on the cover of its book, where it clearly identified its own trademarks prominently on the front cover of its books, and where it placed disclaimers on the front cover and first page of its books). Howes, however, placed her disclaimer on an internal web page that contained her Beanie Babies newsletter. The beaniebabes.com home page, on which Howes prominently displayed the appropriated Ty logo, did not contain a disclaimer. Further, Howes' web site contained several links to Ty's BEANIEBABIES.COM web site without warning to visitors that they were being transferred to another web site. All these factors combine to suggest that Howes' web site and products are "in some way related to, or connected or affiliated with, or sponsored by" Ty. Thus, this Court finds sufficient similarity between Ty's and Howes' marks to create a likelihood of confusion.

*b. Similarity of the products*

To determine whether the products are sufficiently similar to confuse consumers, the inquiry is not whether the two products are interchangeable, but whether they are the kind the public might very well attribute to a single source. Eli Lilly & Co., v. Natural Answers, Inc., 233 F.3d 456, 463 (7th Cir. 2000); Ty, Inc. v. Softbelly's, Inc., 2001 WL 125321, at *6. Howes and Ty both sold BEANIE BABIES. That fact alone, however, is not sufficient to conclude that confusion would occur. Ty, Inc. v. Perryman, 2001 WL 826893, at *6.

Ty sells its BEANIE BABIES through its licensee and authorized distributors, and not on its web site, BEANIEBABIES.COM. Howes, on the other hand, sold BEANIE BABIES on the secondary market and she also promoted her store, The Bean Bag Store, through her web site. As noted here and in other cases, there is a thriving and well-known secondary market for BEANIE BABIES; to the extent the relevant class of consumers is aware of this market, there is less likelihood that they will believe Ty is affiliated with a second-hand dealer. See Ty, Inc. v. Perryman, 2001 WL 826893, at *6.

Here, there is more similarity than the mere selling of BEANIE BABIES. Howes and Ty both offer Internet web sites designed to promote Ty BEANIE BABIES, and the domain names essentially are identical. Further, because Howes prominently displayed Ty's distinctive colorful logo on its web site, because its web site contained links to Ty's web site, and because Howes sold products that resembled Ty's own variations, it is likely that customers would believe either that Howes was an authorized distributor of Ty products (like www.tytrade.com), or that the web site was "in some way related to, or connected or affiliated with, or sponsored by" Ty. In other words, the fact that Howes was a second-hand dealer is not any more dispositive of whether confusion would

*not* occur than the fact that both parties sold BEANIE BABIES shows that confusion *would* occur. Thus, this Court believes this factor slightly favors Ty.

### c. *Area and manner of concurrent use*

When considering the area and manner of concurrent use factor, a court must assess whether "there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." Ty, Inc. v. Jones Group, Inc., 237 F.3d at 900 (citing Forum Corp. of North America v. Forum Ltd., 903 F.2d 434, 442 (7th Cir. 1990)). To determine whether the area and manner of concurrent use as between the two marks is likely to cause confusion, a court should consider the following: (1) the relative geographical distribution areas; (2) whether there is evidence of direct competition between the relevant products; (3) whether the products are sold to consumers in the same type of stores; (4) whether the products are sold in the similar section of a particular store; and (5) whether the products are sold through the same marketing channels. Ty, Inc. v. Jones Group, Inc., 237 F.3d at 900 (citations omitted).

Both Howes and Ty promote, distribute, and sell BEANIE BABIES through the Internet.[5] Ty also argues that both Howes and Ty sell products through the same marketing channels because Ty has sold BEANIE BABIES over the internet through its licensee and Ty has also facilitated the sale of BEANIE BABIES by others on the Internet at the www.tytrade.com web site. However, both occupy different places in the market – Ty seeks to sell brand-new BEANIE BABIES, Howes sold BEANIE BABIES on the second-hand market. See also Ty, Inc. v. Perryman, 2001 WL 826893, at *7 (stating that Bargainbeanies.com occupies a different place in the market because it caters to collectors interested in buying rare or retired BEANIE BABIES on the second-hand market). Howes

---

[5]Ty does not directly sell or distribute BEANIE BABIES from its BEANIEBABIES.COM website; rather, it sells and distributes BEANIE BABIES over the Internet through its licensee, www.tytrade.com.

does not only sell BEANIE BABIES, though; she also sells unauthorized plush toys and products that incorporate Ty's trademarks, which is evidence of direct competition between the two merchants. Thus, the area and manner of concurrent use factor slightly favors Ty.

*d. Degree and care likely to be exercised by consumers*

The less care that consumers take in purchasing a product, the greater the likelihood that similar marks will confuse customers to the source or sponsorship of the product. Ty, Inc. v. Publ'ns Int'l, Ltd., 2000 WL 1499449, at *12 (citations omitted). Ty argues that the degree of care exercised by consumers will be minimal. Howes points out, this view is contrary to the position Ty took in another case, Imperial Toy Corp. v. Ty, Inc., 48 U.S.Q.P.2d 1299, 1998 WL 601875 at *4 (N.D. Ill. Sept. 9, 1998). In *Imperial Toy*, Ty argued that consumers were sophisticated and would exercise care and the court found that "[t]he typical preteen consumer of the Beanie Baby and Friendly Pebble Pet toy appears to be quite educated as to the differences between Beanie Babies and *other brands* of plush toys." Id. at *5 (emphasis added); see also Ty, Inc. v. Perryman, 2001 WL 826893, at *7-8 (expressing belief that consumers will exercise care with respect to purchasing BEANIE BABIES despite Ty's claims that they will not); Ty, Inc. v. Publ'ns Int'l, Ltd., 2000 WL 1499449, at *13 (observing that collectors of BEANIE BABIES are constantly concerned with the authenticity of their plush toys and identifying tags"). But see Ty, Inc. v. Softbelly's, Inc., 2001 WL 125321, at *6 (finding that collectors of BEANIE BABIES are not necessarily the largest or most relevant group of consumers, and that BEANIE BABIES' low cost thus indicates that the relevant consumer will exercise a relatively minimal degree of care in purchasing these products, pointing toward a likelihood of confusion).

Ty distinguishes its position in *Imperial Toy* from its position in this case by arguing that this case does not center around consumers' ability to differentiate between two different plush toys.

Rather, the question is whether a consumer arriving at a web site almost identical in name to Ty's web site, selling Ty's products, and employing Ty's distinct logo at the top will be sophisticated enough to know that the site is not owned, endorsed, or affiliated with Ty. Ty submits that consumers will not be sophisticated enough to exercise a high degree of care. This Court does not find Ty's distinction to be persuasive enough to overcome the findings of previous courts on this issue. Therefore, this factor weighs in favor of Howes.

> ### e. Strength of complainant's mark

Howes concedes that Ty's BEANIE BABIES mark is strong. This factor therefore favors Ty.

> ### f. Actual confusion

Ty has conceded that there is no evidence of actual confusion in this case. While actual evidence is not essential to a finding of a likelihood of confusion, <u>Eli Lilly & Co.</u>, 233 F.3d at 465, this factor favors Howes.

> ### g. Intent of defendant to palm off her product as that of another

Ty argues that Howes used "beaniebabes.com" because she wanted to get a free ride on Ty's goodwill and that Howes admissions to this fact are "clear and uncontroverted." Howes did not admit that she selected the domain name to leverage Ty's goodwill; she admitted that she chose the name because she desired to sell BEANIE BABIES. Ty made this same argument against the defendant in *Ty, Inc. v. Perryman*, who said she chose Bargainbeanies.com because "it seemed like an easier way to sell Beanie Babies and other plush toys." <u>Ty, Inc. v. Perryman</u>, 2001 WL 826893, at *8. The court held that statement was not direct evidence of intent to "capture part of Ty's market." <u>Id.</u> Likewise, this Court finds that given the thriving secondary market, Howes desire to

make money selling BEANIE BABIES is not direct evidence that she intended to palm off her product(s) as Ty's.

This is not to say that the combination of her choice of domain name, the appropriation and prominent display of Ty's distinct BEANIE BABIES logo, and her use of Ty's trademarks in the naming and promotion of non-Ty products is not *circumstantial* evidence that Howes intended to leverage or "cash in" on the tremendously valuable goodwill of Ty. Cf. Horn Abbott v. Sarsaparilla, 601 F. Supp. 360, 365 (N.D. Ill. 1984) ("An obvious attempt to cash in on a senior user's reputation and advertising leads invariably to a conclusion that likelihood of confusion not only exists, but was intended by the newcomer."). In fact, this Court particularly notes the evidence in the record that Howes advertised her non-Ty products by displaying them next to images of BEANIE BABIES that looked similar and she advertised that they were "like Beanie Babies to wear on your back." Howes sold her WEE BEANIES in themed sets like TEENIE BEANIES, and she advertised that they were the same size as TEENIE BEANIES. Thus, it is not clear which party this factor favors.

In sum, this Court believes that most of these factors weigh in favor of Ty. However, because determining the likelihood of consumer confusion is so fact intensive and reasonable minds can differ, this Court denies summary judgment on Ty's trademark infringement claims arising under §1114.

B. *Trademark Infringement Under §1125(a) - The "BEANIES" Mark*

Ty argues that its BEANIES trademark is protected at common law. In order to prevail in a claim under §1125(a), Ty has to show that (1) it has a prior, protectable trademark in BEANIES, and (2) that Howes' use of that mark is likely to cause confusion. Ty, Inc. v. Jones Group Inc., 237 F.3d 891, 897 (7th Cir. 2001); Ty, Inc. v. Perryman, 2001 WL 826893, at *9.

While Howes does not argue that BEANIES is generic, her argument that the "beanie babies" mark has become generic parallels the argument the defendant made in *Ty, Inc. v. Perryman* that BEANIES was not entitled to trademark protection. Ty presented substantially the same evidence as it does in this case[6] on that issue and the court discussed in great length the five categories of distinctiveness under *Mil-Mar Shoe Co., Inc. v. Shonac, Inc.*, 75 F.3d 1153, 1156-57 (7th Cir. 1996) as well as the test for genericness under *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996). Ty, Inc. v. Perryman, 2001 WL 826893, at *9-13. The court ultimately stated:

> We find, therefore, based on the evidence of Ty's use of the word 'beanie(s)' beginning in 1995 and the extensive evidence that the term had become a nickname for BEANIE BABIES before 1998, that Ty has met its burden of showing that it has a protectable interest in the "beanie(s)" mark. There is no genuine issue.

Id. at * 13. See also Ty, Inc. v. Softbelly's, Inc., 2001 WL 125321, at *2 (finding that there is a better than negligible chance of Ty proving that BEANIES is not generic); Ty, Inc. v. Jones Group, Inc., 2001 WL 125321 at *3-4 (same).

Likewise, there is no genuine issue in this case that Ty has established a protectable interest in the BEANIES mark, or that BEANIE BABIES has become generic. Here, Howes presents even less evidence than did the defendant in *Ty, Inc. v. Perryman*. Howes presents copies of a search for domain names containing the BEANIE(S) or BEANIE BABIES words that resulted in over 1,600 domain names. However, she does not offer evidence as to which of these web sites, if any, use these names to refer to products *other than* Ty BEANIE BABIES. Additionally, Howes submits twelve difference exhibits in which the listed product names contained the word "Beanie(s)." At

---

[6]This evidence includes Ty's history of priority and actual, continuous use of the BEANIES trademark, its substantial use of the mark in commerce through its newsletters, product packaging, swing tags, shipping boxes, and its licensee's sales of BEANIE-branded products, its rights to the BEANIE trademark by virtue of its BEANIE family of marks, and a vast amount of newspaper and other media that convincingly demonstrate the public's association of the BEANIE mark with Ty and Ty's products.

best Howes has submitted a list of infringers that Ty has not pursued yet. But, as Ty argues, it is not required to pursue all infringers simultaneously in order to preserve its trademark rights. Ty, Inc. v. Publ'ns Int'l, Ltd., 2000 WL 1499449, at *14 ("[E]vidence of other potential infringers is irrelevant to a suit against a particular infringer."). Howes' evidence is paltry compared to Ty's evidence and clearly insufficient to create genuine issues of fact as to whether BEANIE BABIES has become generic, or on whether BEANIES is a protectable trademark under common law.[7]

Upon determination that Ty had a protectable interest in the "BEANIES" mark, the next question is whether Ty has established a likelihood of confusion between the term BEANIES and Howes' terms beaniebabes.com and its non-Ty goods that incorporate the word BEANIES in its entirety. The analysis of this issue is substantially identical to the analysis already taken. Similarly, deceptive trade practices under Illinois law also is analyzed under the likelihood of confusion standard. Ty, Inc. v. Perryman, 2001 WL 826893, at *13 (citing TMT North Am., Inc. v. Magic Touch GmbH, 124 F.3d 876-881 (7th Cir. 1997). Thus, because a genuine issue of fact exists on the likelihood of confusion issue, summary judgment is denied on Claims I, II, and IV.[8]

---

[7]Ty argues that Howes conceded Ty's rights in BEANIES because she only disputed Ty's rights in BEANIE BABIES. Howes, however, did note in her Local Rule 56.1 Statement of Additional Facts that Ty had never registered the word "beanie" alone as a trademark. Additionally, since she argued that Ty's *registered* BEANIE BABIES trademarks had lost protection because it had become generic, it was not clear that she intended to concede that Ty's *non-registered* BEANIE(S) trademark was protected.

[8]Similarly, this Court also denies Ty summary judgment on its trademark infringement claims based on the doctrine of initial interest confusion. The Seventh Circuit has equated initial interest confusion to a "bait and switch" scheme. Dorr-Oliver, Inc. v. Fluid Quip, Inc., 94 F.3d 376, 382 (7th Cir. 1996). The court stated:

[T]he Lanham Act forbids a competitor from luring potential customers away from a producer by initially passing off its goods as those of the producer's, even if confusion as to the source of the goods is dispelled by the time any sales are consummated. This "bait and switch" of producers, also known as "initial interest" confusion, will affect the buying decision of consumers in the market for the goods, effectively allowing the competitor to get its foot in the door by confusing

## 1. *Trademark Dilution*

Ty also brought a claim under the Trademark Dilution Act of 1995, which opens an alternative avenue of relief for the owners of famous marks. The Act provides:

> The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

15 U.S.C. §1125(c)(1). There are two principal forms of dilution: tarnishing and blurring. Dilution by tarnishing occurs when a junior mark's similarity to a famous mark causes consumers mistakenly to associate the famous mark with the defendant's inferior or offensive product. Dilution by blurring, which is the injury at issue here, occurs when consumers "see the plaintiff's mark used on a plethora of different goods and services, . . . raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." Eli Lilly, 233 F.3d at 466 (citations omitted).

To prove trademark dilution, Ty must establish that: (1) its logo and trade name are famous trademarks; (2) Howes' use began after the marks had become famous; (3) Howes' use "causes dilution" of the trademarks; and (4) Houses' use is commercial and in commerce. Syndicate Sales, Inc. v. Hampshire Paper Corp., 192 F.3d 633, 639 (7th Cir. 1999); Ty, Inc. v. Perryman, 2001 WL 826893, at *13. Howes argues that Ty's trademarks were not famous by the time she began using

---

consumers.

Id. (citations omitted); see also Eli Lilly, 233 F.3d at 464 ("[Initial interest] confusion, which is actionable under the Lanham Act, occurs when a consumer is lured to a product by its similarity to a known mark, even though the consumer realizes the true identity and origin of the product before consummating a purchase.").

Ty argues that Howes, by establishing a web site at a domain name so profoundly similar to Ty's own domain name and trademarks, and by prominently displaying Ty's logo on her web site, causes initial interest confusion. Ty further argues that Howes capitalized on the initial confusion by selling her goods and promoting her physical store and other business enterprises to the initially confused visitors. While Ty's argument is strong, this Court believes that there is a genuine issue of fact as to whether consumers actually would be initially confused upon entering Howes' web site. In fact, the Seventh Circuit has noted that in cases dealing with sophisticated consumers, as is arguably the case here, initial interest confusion is unlikely. Rust v. Env't & Infrastructure, Inc. v. Teunissen, 131 F.3d 1210, 1217 (7th Cir. 1997).

the beaniebabes.com web site because it had only been using the marks for approximately eight years. She cites cases in which courts in other jurisdictions held that nine, fifteen, and forty-six years were insufficient amounts of time for marks to be famous. See Genovese Drug stores v. TGC Stores, 939 F. Supp. 340, 349 (D. N.J. 1996) (holding that nine years is an insufficient amount of time for a mark to become famous); Michael Caruso & Co. v. Estefan Enter., 994 F. Supp. 1454, 1465 (S.D. Fla. 1998) (holding that fifteen years is insufficient); Star Mkts., Ltd. v. Texaco, Inc., 950 F. Supp. 1030, 1034 (D. Haw. 1996) (holding that forty-six years is insufficient). There is no arbitrary minimum time, however, for proving fame for these purposes, nor did the courts in those cases suggest that there is. Rather, the duration of the use of the BEANIE(S) or BEANIE BABIES mark is only part of the analysis; a court must also consider the extent of advertising and publicity the marks received during their life. See Eli Lilly & Co. v. Natural Answers, Inc., 86 F. Supp. 2d 834, 849 (S.D. Ind. 2000), aff'd 233 F.3d 456 (7th Cir. 2001) (holding that "the massive publicity surrounding the PROZAC (R) mark and product during the last eleven years has been more than sufficient to make it a "famous" mark despite its relatively short life").

Like PROZAC (R), Ty's BEANIE BABIES and BEANIE(S) marks enjoyed such "massive publicity" to become famous in a relatively short period of time. As Judge Grady held in Ty, Inc. v. Perryman: "Ty's BEANIE BABIES and 'Beanie(s)' marks attained extraordinary success in the market by December of 1997. Numerous newspapers from all over the country ran articles about consumers' frenzy to collect toys in 1996 and 1997. We have no trouble finding that the plaintiff's mark was famous in December of 1997." 2001 WL 826893, at *13.

While Howes admits that she used the beaniebabes.com domain name as the address of her commercial web site that sold BEANIE BABIES, she argues that she merely used the domain name as an address for her web site, which constituted "fair use" and not "commercial use" under the statute. For support, Howes cites Playboy Enters. v. Welles, 7 F. Supp. 2d 1098 (S.D. Cal. 1998), where the court found that model Terry Welles was entitled to a "fair use" defense in connection with her use of Playboy marks in relation to her web site. The court held that it was evident that

Welles had minimized her references to *Playboy* on her web site and that she had not attempted to trick consumers into believing that they were viewing a *Playboy*-endorsed web site. Id. at 1103-04.

Here, however, unlike Welles, it is not evident that Howes tried to minimize her references to BEANIE BABIES, BEANIES, or other Ty products. On the contrary, Howes selected a domain name as close as possible to Ty's BEANIEBABIES.COM, she appropriated Ty's BEANIE BABIES logo and prominently displayed it on her web site, and she linked her web site to Ty's. Further, as Howes admitted herself, she chose the domain name beaniebabes.com to sell BEANIE BABIES, which she in fact did, along with other products from her store. Thus, this Court is unpersuaded by Howes' fair use defense and finds that Howes used the BEANIE BABIES and BEANIES marks in commerce.[9]

Therefore, the only issue remaining is whether Howes' web site dilutes Ty's trademarks. See Ty, Inc. v. Perryman, 2001 WL 826893, at *13. Dilution "means the lessening of the capacity of a famous mark to identify and distinguish goods or services, *regardless of the presence or absence of competition between the parties or likelihood of confusion among consumers.* 15 U.S.C. §1127. Dilution occurs in cyberspace when a defendant's use "lessens the capacity of [the plaintiff] to identify and distinguish its goods and services by means of the Internet." Id. (citing Intermatic, Inc. v. Toeppen, 947 F. Supp. 1227, 1240 (N.D. Ill. 1996)). Further, in this circuit, a showing of actual

---

[9]Similarly, this Court rejects Howes' argument that the first sale doctrine bars all of Ty's claims. "First sale doctrine" provides that, once a trademark owner sells its product, buyer may re-sell under original mark without incurring liability. However, the doctrine does not apply if conduct beyond mere resale, such as active or purposeful deception, false suggestion, or misrepresentation on part of reseller, is designed or likely to cause confusion about whether or not reseller is an authorized dealer. Enesco Corp. v. Merch. Mart, Inc., 56 U.S.P.Q. 2d 1583, 1593-94 (N.D. Ill. 2000); McCarthy on Trademarks, §25.41 (4th ed. 2000). In this case, Howes was not merely a reseller; as stated above, there are genuine issues of fact whether Howes participated in active or purposeful deception, false suggestion, or misrepresentation that resulted in a likelihood of consumer confusion.

economic harm is not required to establish dilution. Eli Lilly, 233 F.3d at 468. Instead, Ty need only demonstrate a likelihood of dilution based on the renown of its trademarks and the similarity between those marks and the allegedly diluting uses of Howes. See id. at 468-69; Ty, Inc. v. Perryman, 2001 WL 826893, at *13-14.

Ty claims dilution of its BEANIE BABIES mark through the use of Howes' beaniebabes.com domain name. For the reasons stated throughout this opinion, this Court finds Howes' mark is sufficiently similar to BEANIEBABIES.COM and BEANIE BABIES to constitute trademark dilution. Ty has demonstrated that Howes has lessened Ty's capacity to identify and distinguish its goods and services by means of the Internet.[10]

Ty also claims dilution of its BEANIES, BEANIE BABIES, and BEANIE family marks through Howes' sale of non-Ty products renamed with its trademark names. Indeed, Howes advertised, promoted, and sold WEE BEANIES (advertised as the "same size as TEENIE BEANIES"), Backie Packies ("like Beanie Babies you can wear on your backs"), BEANIE BELTS/BEANIE BABIES BELTS, BEANIE BABIES BACKPACKS, STRING-A-BEANIE'S, and BEANIE FASHIONS. This Court finds that Howes clearly lessens the capacity of Ty to distinguish its goods from its competitors. Therefore, Ty's motion for summary judgment as to Count III is GRANTED.

---

[10]Howes argues that Ty is not automatically entitled to every domain name that might include one of its marks. Howes further argues that a finding of dilution in this case would create a per se rule of dilution where use of another's mark in a domain name is automatically dilution. This Court disagrees. As Howes points out, when an Internet user has an innocent and legitimate reason for using the famous mark as or in her domain name, that use is permissible *provided that it has not otherwise infringed upon or diluted the trademark.* See e.g., Ty, Inc. v. Perryman, 2001 WL 826893, at *14 (denying summary judgment because there was a genuine factual question as to whether Ty's BEANIE BABIES mark is sufficiently similar to "Bargainbeanies.com").

## IV. Conclusion

For the foregoing reasons, this Court GRANTS Ty's motion for summary judgment as to Count III and DENIES Ty's motion for summary judgment as to Counts I, II, and IV.

Enter:

David H. Coar
United States District Judge

Dated: November 9, 2001